Case number 19-2089 B and G Towing LLC et al. versus City of Detroit, Michigan. Arguments not to exceed 15 minutes per side. Mr. Greenlee, you may proceed for the appellants. Good afternoon, your honors, and may it please the court. My name is Andrew Greenlee, and I'm here on behalf of the appellants. I'd like to, if it pleases the court, reserve five minutes for the appellants. Your honors, a straightforward application of the plain language of section 2520 compels reversal in this case. Section 2520 provides a cause of action for, quote, any person whose oral communication is intercepted, disclosed, or intentionally used in violation of this chapter. This case is about the intentional use of oral communication. Our position is that when the city relies on a document that has been sealed pursuant to Title 3 in making a licensing decision, knowing that it's a sealed document, that action constitutes intentional use. And because the document remained under seal pursuant to Title 3, it was, quote, in violation of Title 3. The initial wiretap was okay, right? Yes, that's correct. So does that mean that we're only talking about 2517-related situation as opposed to any of the other parts of the chapter, like 2511, that concern unlawful interception? Well, we're not challenging the lawfulness of the interception. That ship has somewhat sailed. We're not the defendant in the wanted to challenge the lawfulness of the interception. The cause of action, we mainly rely on Section 2520. But we do think that the uses in 2517 are quite important. And again, this is the statement from Dorfman. While Title 3 permits disclosure of lawfully obtained wiretap material in limited instances, such as in Section 2517, it, quote, implies that what is not permitted is forbidden. And this court... Council, 2520 just creates a cause of action. It doesn't create substantive prohibitions, right? 2520 just provides a cause of action for things that are in Title 3. So you need to point us... It's like you need to point us to something else that creates the liability. And I think Judge Nalbandian was asking whether 2511-1 is off the table. Well, we think that the main statutory provision that creates liability is 18 U.S.C. Section 2518-8B, where wiretap applications and orders entered thereon, quote, shall be sealed by the judge, the district court judge, and, quote, shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction. So in 2520, it gives us a cause of action where the information or the oral communication was intentionally used in violation of the chapter. And it's our position that since this was a sealed document, it was used in violation of the chapter. So that's the violation primarily, is the use of that document after it had been sealed by the City of Detroit. But does 2518 itself, it does say it must be sealed and then unsealed for good cause, can be unsealed for good cause, but it doesn't impose any criminal or civil liability for use, does it? No, it doesn't. But Section 2520, which is, again, that's the section at issue here, if there is a violation of the chapter or a document or oral communication is intentionally used in violation of the chapter, that that is actionable. And it's our position, again, that Section 2518.8b protects that information, wiretap applications are protected, and for good reason. The overriding concern in enacting Title III was to protect the privacy of individuals. That's from Gail Bard of the United States Supreme Court. So we know that that was the overriding concern. And one of the ways where they effectuated some of the protections is in Section 2518.8b. Now, there's some discussion in the briefs about whether or not the list in 2517 is the exclusive manner in which things can be used or disclosed. There's a section at the very end of 2520, it's Section 2520g, and that section provides, quote, any willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by Section 2517 is a violation of this chapter for purposes of Section 2520a. So we know that that list is exclusive because Section 2520g says that it's exclusive. And there are eight provisions in Section 2517. But 2520g creates civil liability for certain kind of actors who violate 2517, right? Law enforcement officers, other governmental entities. So isn't it natural to read 2517 as creating civil liability for those officials who violate 2517, but then you'd have to be an official regulated by 2517 in the first place? And it's our position that the city of Detroit is a governmental entity? It might be a governmental entity, but how is it regulated under 2517? So 2517 imposes non-disclosure duties on all kinds of people, investigative law enforcement officers, or attorneys for the government, other federal officials, but none of those seem to be a city. Well, it's our position that 2517 doesn't impose it doesn't impose disclosure obligations. It's a list of when disclosure or use is authorized. And it's the exclusive list. And we know that again, because 2520g says that it's the exclusive list. So any beyond the extent permitted by Section 2517 is a violation of this chapter. So again, it's that the 2517 is the alpha and omega. And if it's not something that's listed in 2517, it's simply not permitted. So so a prosecutor couldn't give if there were Brady information in a wiretap, he couldn't turn that over in advance of trial to a criminal defendant because 2517 doesn't encompass Brady obligations. I think I think a prosecutor could do that. Well, I thought it was alpha and omega. Well, I think that I mean, I'd have to take a look at the list. Okay, in any event, you don't need to read the whole list because we don't have a Brady case in front of us right now. And some of my colleagues might have questions. I don't want to write. I mean, I there is also a I think it's implicit in in in the structure of the statute, the criminal defendant would be entitled to the wiretap communication, what I think is would not be permitted would be for the criminal defendant or a defense attorney to disclose that information in violation of the order sealing that information. I think that that to me is non controversial. And that's what happened in this case. And relying on that information after it had been disclosed, pursuant to something that was an unlawful disclosure. I don't think there's any serious question that that's an unlawful disclosure. And so to rely on that information, even after it's been resealed, I think is a it's a violation. It's a violation of title three. And we think it's actionable. I'd like to if I could turn to the structure of the statute, because we think the structure of section 2520 is illustrative of why our interpretation is correct. So it's there are three distinct ways of violating the statute. The first is that the oral communication is intercepted in violation of title three. Second, if the communication is disclosed, and third, if the communication is intentionally used. So if you think about it, it's really kind of three layers of protection. The first protects against communications at the outset at the interception stage. Second layer of protection happens after the interception and protects against the disclosure that violates title three. And the third layer, which is an issue here, happens after the disclosure. And that's when the communications are quote intentionally used. And so we have this, these three layers of protection that happen at three distinct points in time. And this case concerns the third layer, which happens after the disclosure, and that is the intentional use of wiretapped information that's in violation of title three. Your time has expired. Thank you. Thank you very much. All right, Mr. Bresek. Are you able to hear me? I apologize. No matter how many times I do this, I still never get it Detroit, the appellee in this matter. To quickly address, I think some of the questions that you had asked, Brother Counsel, the City of Detroit's Office of Inspector General is not a law enforcement or investigative body as that's defined in the statute. Section 2510 specifically says investigative or law enforcement officer means any officer of the United States or of a state or public subdivision thereof who is empowered by law to conduct investigations or to make arrests for offenses enumerated in this chapter. He says you're a governmental entity under 2520 G. Governmental entity. I wouldn't dispute that. We're certainly a governmental entity. We are the Office of Inspector General as a governmental entity. So then why doesn't that expose you to liability under 2517? Because 2517 doesn't talk about governmental entities. It only talked in the provision. In most of the provisions, there's no provision that talks about governmental entities. The provisions there talk about investigating law enforcement officers, which is defined in a way that would certainly exclude the OIG. The OIG does not have power to obtain a subpoena for a search warrant or wiretap, anything to that effect. And those are the types of individuals that for the most part in Section 2517 have limitations on how they can use wiretap information. Are you restricted at all then? Was there any restriction on you getting the wiretap information and doing whatever you wanted? Yeah, I think the restrictions if for instance the Department of Justice or FBI surreptitiously gave us the information, um, I think we're absolutely, you know, certainly there's liability on the, you know, settings out in the immunity issues, liability on the side of exposing, of the exposure there. But that would clearly be in violation of the statute. I don't think there are any limitations on what a, what the government or any other parties do once information is made public. That's out of the bag, it's out of the bag, um, whether it's made public through... But it was, at the time that you used the information, it was under seal, right? I mean, yes, it had been inadvertently disclosed. I mean, we do, we deal with inadvertent disclosure and discovery and all kinds of other situations. Um, just because something is privileged and gets disclosed doesn't mean it ceases to become privileged, right? That's correct. I'm not sure if I would characterize this information as privileged, and that's just because of the way the statute talks about privilege. Um, but I agree absolutely there's an expectation of privacy, and so whether it's privileged or not may be, um, semantic. Okay, maybe it's not privileged in the sense that it's attorney-client privilege. I know 2517.4 mentions privilege, so if it, if that means attorney-client, whatever, it's under seal though, so certainly it's, it's, it's confidential or it's protected explicitly by the statute, right? I, I, I don't think so once it's already public. I, I, you know, I don't think, so here it was under seal, um, or here it should have been under seal. Obviously, it was filed. I don't think anybody could guess that it was inadvertently filed, um, publicly. The local media picked up on it. There were numerous, every, I'm sure every single, um, local news outlet ran articles on the information that came out of that FBI affidavit, um, that cat was out of the bag, and once it's out there, frankly, I would have thought, you know, I would think it maybe be governmental malpractice for the AI, for the OIG not to consider this information that's already out there in the public domain, um, and the, when the judge resealed, um, when the, when the criminal judge resealed, um, the, the document, there was no order saying that what was already out there can't be used. I, you know, I think that would have been a prior restraint. That's a separate issue, but, um, there was no limitation from the court on how that information could be used. Um, so I, so I think it's public, you know, at the point it becomes public, whether it gets resealed on a docket or not, it's public and can be used by the public or, or the government. Um, I, I don't think there's a, there's a difference. Is there any limitation on that? So if I go steal the wiretap information and give it to the Detroit News, the cat's out of the bag, anybody can use it for anything? I would think at that point, you know, that, that gets, yeah, I mean, I think at that point, based on first amendment principles, I would think the free press, unless we're talking about matters of national security, things like that, the free press probably does have the, uh, the right to run with the story and do what they want with it. The person who, uh, handed the information over, uh, that's another issue. I'm sure there's probably criminal provisions that apply to that, but certainly, um, there's, uh, I think that person would have civil liability if they came into possession of it, um, through a means authorized by the act. So counsel, how did you get this information? Is, uh, is what you're saying today that you got the information because a story ran in the Detroit News or the free press, or is your argument that you pulled it off pacer? I, I, frankly, I'm not completely sure how the city, the city got it. I am pretty confident there were numerous ways the city received it. Um, I, cause I know it came into the city from numerous, in numerous places. So I think for the most part, it was people monitoring the pacer docket. Um, you know, you can get the filings automatically. Um, I think that's how it came in, how it actually got to the city. I can't say for sure. Um, but it, you know, my understanding it was fairly widely disseminated, um, you know, certainly amongst people who had been following, uh, the case because the case, although our issues were limited to Gaspard Fiore, uh, and John Fiore here, um, it was a part of a broader corruption investigation in the Detroit area. Um, the media had been watching it all pretty closely. How long was the, how long was the document on the docket before it was from filing to resealing? I'm not sure. I, I don't know the answer to that. I don't think it was more than maybe 24 hours, but I don't, I, I don't remember how that played out. It, the reason I think it might've been a while is because I think it was filed later in the day. Um, so there was, uh, you know, once it was discovered, I don't know that immediately about it. Um, but I'm not sure how long exactly. Um, but when we, so every time I come back to it, I come back to what 2517 talks about. So 2520 is going, says any use in violation of the statute, um, can give rise to civil liability. But of course, as I think, as you pointed out, 2520 doesn't actually provide the actual, uh, prohibited uses. So you go over to 2517 and every use there is regulating the use of a person who has received the information by means authorized under the statute. So that's going to be the, um, FBI investigators, uh, it, you know, FBI agent has information authorized, um, through means authorized under the statute. So a lawful wiretap, um, they can't just willy nilly share that with their colleagues. They can only share it with a, with another law enforcement officer. Um, and I'm going to specifically about section one, which means, you know, which holds there has to be an investigative purpose. Um, and really all of you, I mean, why isn't, I mean, it seems to me this case comes down to 2520 G we're talking about whether something, whether what happened in this case, it was beyond the extent permitted by 2517. I don't see where what happened here was permitted by 2517. It's not specifically addressed by 2517, I suppose, but 2517 is the only part of this statute that says, what can happen? What do you do when you have lawfully obtained material from a wiretap? So it's lawfully obtained. The government has it. What can they do with it? They can't go out and give it to the Detroit news, I suppose, or they can't just make it public. There's probably, it's got to be on your CEO, et cetera. Why is what happened here permitted by 2517? I would agree with you that I don't think it is expressly permitted by 20, but by 2517, but 2517 is only talking about forbidden uses for people who have obtained the information by a means authorized by the act. So it's set to control what the government can do with the information that it has obtained lawfully by a wiretap subpoena. And so this section just doesn't apply to any other circumstance. I think, for instance, this section doesn't talk about the use of wiretap information that's already been disclosed in a public court proceeding, intentionally disclosed, is allowed. It doesn't talk about that type of use. There's other uses. If it doesn't talk about it, why doesn't your opponent win? In other words, I'm just saying, if I'm looking at the text of the statute, it says it's any use that's beyond the extent permitted, which suggests to me that you have to look in 2517 and find out where does it permit you to do what you did. It doesn't say anything about inadvertent or intentional disclosure that's later under seal, but we know it's under seal still. So I don't know how, I guess I'm still struggling with why it's permitted. It's not, there's no directive that says you can do this. Because 2520 doesn't say, it doesn't apply to any uses that are permitted or not permitted. It simply says there's civil liability if a use is in violation of one of these sections. That's not quite what it says, but could the key be that 2520G is only directed, creates civil liability for investigative or law enforcement officers who disclose beyond the extent permitted by 2517? So in other words, investigative or law enforcement officers or governmental entities regulated by 2517 have civil liability if they violate 2517? Is that the key? Yeah, I'm sorry. Yeah, I think that's the only way to make sense of that provision in the context of the rest of the statute where section A, 2520A is saying any person whose wire, oral or electronic communication is disclosed or intentionally used in violation of this chapter. So I don't think they're creating- In other words, let me ask this question. So if the attorney, the defense attorney here who failed to seal the information, but she also went and like gave it to the city or she disclosed it to the newspaper or somehow otherwise, she's not an attorney for the government or a federal official or any of those people. So your theory is that she couldn't be sued under 2520G. So your theory is also you can't be sued under 2520G because you're not regulated by 2517? No, I think she, there is one sub rule in 2517 that says any person, so this one's not limited to law enforcement, any person who has received by any means authorized by this chapter any I think she, the defense attorney is, can't disclose the information without exposing herself to civil- Because she got it under the auspices of 2517. But if she had been, if she had left a piece of paper on, with wiretap information on a table in a restaurant and the waitress picked it up and the waitress disclosed it, the waitress couldn't be liable. I don't think so. I can't see how she would actually have any- If she's liable, I don't know how you're not liable. I'm sorry? If the waitress is liable, I don't know why you're not liable. Because I think the reason the waitress isn't liable is because she's not regulated by 2517 because she didn't, she might be a person, but she didn't get the information under the auspices of Title III. Correct. I think I probably misspoke there. Yeah, the waitress would not be liable in that situation because she didn't exactly correct. She did not receive it under the auspices of Title III. So she's free to do with it as she will. We get into First Amendment issues at that point. But I think that's correct. Very briefly then, I want to address the argument that was actually made for the first time in the reply brief on appeal regarding the language in 2517 that talks about privilege. It says, no otherwise privileged information would lose its privilege. I have a red flag, but just to finish the sentence, no otherwise privileged information loses its privilege, but that otherwise privileged information is key because that means it's probably client privilege or something like that. Thank you. Mr. Greenlee, you'll have your honors. Okay, regarding the public records defense, this is not really the first time this court has encountered something that's become public record and the issue has arisen. I'd like to draw the court's attention to Smoot v. United Transport Union, and that's published at 246 Federal 3rd 633. And in that case, an individual employed by CSX Railways intercepted communications during a meeting between the union and CSX after he was asked to leave. He actually filed those documents in his complaint. They were published by the media, and so those communications became part of the public record. But CSX then moved to strike the recordings, and the transcripts were stricken and removed from the court record. And this court held that the public records exception did not apply, even though the record was publicly available for three months and was reported in the media. And that's because the court struck the transcripts from the record. So we think that logic applies with even greater force in this case. If the sealed document was just briefly revealed on PACER for some 24 hours and then promptly resealed, then just as in Smoot, the fact that it became part of the public domain doesn't mean that that is an exception to liability. Do you know how long the document, how long it sat out there on PACER? Was it 24 hours? You know, honestly, I think that it was my best recollection, and I'm not sure if this is correct, but I think it was filed on a Friday evening and then it was resealed on the Monday morning. So it might have been in the public domain for three days. But again, in the Smoot case, it was in the public domain for three months. And just because it was in the public domain didn't mean that there couldn't be a clause of action. And in fact, this court said that the person who revealed that was in fact subject to... Is that a Title III case? You didn't cite that in your briefs. Well, you know, I didn't come across it until I was preparing for oral argument today. I'm never going to try to read every case on Section 2520 before today. I'm just wondering, is that a Title III case? I'm sorry, I'm not not citing it. I apologize, ma'am. It is a Title III case. It's a case that arises under Section 2520, just as our case does today. So we think that that is binding, and that takes care of the public records defense. There is no First Amendment interest in the city. It's not like it's a newspaper. You know, this is a sealed document after all. Just because, you know, that was the conclusion of Judge Posner in the Dorfman case, was that just because there is, even if there is a First Amendment interest in it, because it's a sealed document, the fact that it's sealed, and the fact that it's not permitted under Section 2517 means that it can't be revealed, even if the newspaper has a First Amendment interest in it. I'd like to also, just quickly, because the Dorfman case is important in one other respect, and this is quoted in the United States versus Russia, which is another Sixth Circuit case. They quote Dorfman for, quote, unlike the Fourth Amendment, the invasion of privacy is not simply over and done with when an unlawful intrusion has been effected. Rather, the disclosure or use of information obtained through such an intrusion amounts to a separate injury to the victim's privacy interest. And so, Ms. Fiori, she had an injury to her privacy interest when it was initially disclosed, and she had a separate injury, a financial injury, to her interest after the city of Detroit essentially put her out of business based on nothing more than a sealed document that should have never been in the public domain in the first instance. Okay, but if they had gotten that information from the newspaper, I mean, that's a little beyond us. That'll be if you go to trial, but you have to prove that the injury would result from this, right? Not from, if they got it from the newspaper, they could also have put her out of business, right? Well, no, we don't think so. We think that if they wanted to launch their own investigation, they could launch their own case. If they got this from some independent source and not from the sealed document, that might be permissible, or alternatively, if they wanted to rely on some other form of communication. You'd like a fruits of the poisonous tree doctrine when there's a suppression motion that you didn't use? I mean, there is, 2515 creates a suppression motion, right? Yes, Your Honor, we could not, and I apologize if I cut you off. We couldn't, under Russia, we couldn't get the document suppressed because it has to be either unlawfully intercepted. The order of approval had to be insufficient on its face or the interception was not made in conformity with the order of authorization. I see. So the suppression motion isn't broad enough to cover the claim. So you think you couldn't have prevented them from using the evidence to make their decision based on the evidence? That's exactly right, Your Honor. This court said it in the United States versus Russia. Next to last sentence, I would commend that decision to the court's attention. Thanks for your time, Your Honor. Okay, we appreciate the argument both of you given and we'll consider the matter carefully. Thank you. Your Honors, this might be very unorthodox. I'm sorry. This might be very unorthodox, but he raised a case that we hadn't briefed. This case, I would like the opportunity to address it. Of course, that's at your discretion. Well, if you want to submit something like within the next day or so and respond to it in writing, that would be fine with me. I don't know how the other panel members feel about that, but we can't give you additional argument time. It would need to be like literally, you know, probably tomorrow or Friday. One of the disadvantages is we cannot confer confidentially with each other in this kind of a setting. Okay, I'll file something and seek leave, I guess, probably. You pardon me? I will file something with the request for leave to file it. Okay, thank you. Thank you. With that, I believe that you may adjourn court, Anthony. This honorable court is now adjourned.